IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JASMINE W. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:25-cv-499-RAH-JTA |
| | ) | |
| HYUNDAI MOTOR | ) | |
| MANUFACTURING OF ALABAMA, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is the motion to dismiss filed by Defendant Hyundai Motor Manufacturing of Alabama. (Case No. 499[1] Doc. No. 14.) For the reasons stated below, the undersigned recommends that the motion be granted in part and denied in part.

## I.    JURISDICTION

The court exercises jurisdiction based on federal question jurisdiction. 28 U.S.C. § 1331. Plaintiff asserts claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a–2000a-6, 2000e–2000e-17, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12212. Plaintiff also asserts a worker's compensation claim in Case No. 687, but the court does not have jurisdiction over that claim because it was

---

[1] In *Jones v. Hyundai Motor Manufacturing Ala., LLC*, No. 2:25-cv-687-RAH-JTA, Plaintiff filed a complaint asserting claims similar to those she asserts in this action. Because the two cases are interrelated, filings from both cases are referenced in this Recommendation. For expediency, the undersigned uses "Case No. 499" to refer to *Hyundai Motor Manufacturing Ala*, No. 2:25-cv-499-RAH-JTA, and "Case No. 687" to refer to *Hyundai Motor Manufacturing Ala., LLC*, No. 2:25-cv-687-RAH-JTA.

removed from state court. *See* 28 U.S.C. § 1445(c); *Reed v. Heil Co.*, 206 F.3d 1055, 1057 (11th Cir. 2000); *Alansari v. Tropic Star Seafood Inc.*, 388 F. App'x 902, 905–06 (11th Cir. 2010).

## II.    STANDARD OF REVIEW

### A.    Shotgun Pleadings

Under the Federal Rules of Civil Procedure, a complaint must contain (1) "a short and plain statement of the grounds for the court's jurisdiction[,]" and (2) "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1)–(2). Additionally, a complaint "must state its claims . . . in numbered paragraphs, each limited to a single set of circumstances." Fed. R. Civ. P. 10(b). Complaints that violate Rule 8(a)(2) or 10(b) are often referred to as shotgun pleadings, which means that they "fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Shotgun pleading errors should be addressed by a motion for more definite statement pursuant to Fed. R. Civ. P. 12(e). *Id.*; *see also Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). In the absence of such a motion, the court must *sua sponte* address shotgun pleading errors pursuant to its "inherent authority to control its docket and ensure the prompt resolution of lawsuits, which in some circumstances includes the power to dismiss a complaint for failure to comply with Rule 8(a)(2) and Rule 10(b)." *Weiland*, 792 F.3d at 1320, 1324; *Anderson*, 77 F.3d 367 n.5. Either way, "[a] dismissal under Rules 8(a)(2) and 10(b) is appropriate where 'it is virtually impossible to know which allegations

2

of fact are intended to support which claim(s) for relief,'" and an opportunity to amend has failed to cure the problem. *Weiland*, 792 F.3d at 1325 (citation modified) (quoting *Anderson.*, 77 F.3d at 366); *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018); *Magluta v. Samples*, 256 F.3d 1282, 1284–85 (11th Cir. 2001).

B.    Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires a short and plain statement of the claim showing that the pleader is entitled to relief." *Sanders v. Zalesky,* No. 1:25-CV-71-WKW, 2026 WL 579503, at *1 (M.D. Ala. Mar. 2, 2026) (internal quotations and citation omitted). When evaluating a Rule 12(b)(6) motion, the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).

To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (citation modified).

3

The allegations in the complaint should present a "plain statement possessing enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (cleaned up). "Mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do,' and a plaintiff cannot rely on 'naked assertions devoid of further factual enhancement.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at 678, 680. A plaintiff must "allege[] enough facts to nudge his claim . . . across the line from conceivable to plausible." *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Twombly*, 550 U.S. at 570).

The complaint of a *pro se* plaintiff is held to "'less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Douglas v. Yates*, 535 F.3d 1316, 1320 (11th Cir. 2008). Despite the liberal construction afforded a *pro se* complaint, it "must still comply with procedural rules governing the proper form of pleadings." *Hopkins v. St. Lucie Cnty. Sch. Bd.*, 399 F. App'x 563, 565 (11th Cir. 2010) (citation modified)). The leniency afforded to *pro se* pleadings is not license for the court "'to serve as de facto counsel for a party . . . or to rewrite an otherwise deficient pleading . . . to sustain a cause of action.'" *Nails v. AmeriCredit*, No. 2:10-cv-826-MHT-CSC, 2011 WL 310254, at *1 (M.D. Ala. Jan. 6, 2011) (quoting *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citation modified), *overruled on other grounds*, 556 U.S. 662), *report and recommendation adopted*, No. 2:10-cv-826-MHT, 2011 WL 304790 (M.D. Ala.

4

Jan. 28, 2011).

### III.   PROCEDURAL HISTORY

A.   *Jones v. Hyundai Motor Manufacturing Ala.*, No. 2:25-cv-499-RAH-JTA

On July 8, 2025, in *Jones v. Hyundai Motor Manufacturing Ala.*, No. 2:25-cv-499-RAH-JTA, *pro se* Plaintiff Jasmine W. Jones filed a complaint in this court against her former employer, Hyundai Motor Manufacturing of Alabama. (Case No. 499 Doc. No. 1.) She alleged claims for employment discrimination and retaliation. (*Id.*) On the same day, she moved for assistance from the court's *Pro Se* Assistance Program ("PSAP") in drafting an amended complaint. (Case No. 499 Docs. No. 4, 5, 8.) The court granted the motion, appointed a PSAP volunteer attorney, and ordered Plaintiff to file an amended complaint. (Case No. 499 Doc. No. 8.)

Plaintiff timely filed the amended complaint with the assistance of the PSAP attorney volunteer. (Case No. 499 Doc. No. 9.) In it, she asserted an ADA discrimination claim, an ADA retaliation claim, and a Title VII retaliation claim. (*Id.* at 4–5.)

Defendant moved to dismiss the amended complaint. (Case No. 499 Doc. No. 14.) The motion has been briefed and is under submission. (Case No. 499 Docs. No. 20, 22.)

B.   *Jones v. Hyundai Motor Manufacturing Ala., LLC*, No. 2:25-cv-687-RAH-JTA

As the court later learned, on July 8, 2025, two and one-half hours after Plaintiff filed her initial complaint in this court, she filed a related complaint in the Montgomery Circuit Court. (Case No. 499 Doc. No. 1 at 1; Case No. 687 Doc. No. 1-6 at 4.) Her state court complaint is not a model of clarity. On the civil cover sheet, she checked boxes indicating negligence, civil rights, and worker's compensation claims were her primary

5

causes of action. (Case No. 687 Doc. No. 1-6 at 5.) In her one-paragraph complaint, she alleged Defendant "intentionally allowed physical [and] mental abuse at the hands of coworkers, management, and HR," "denied medical treatment for work related injuries," and retaliated against her (including by terminating her) for reporting incidents of workplace disability discrimination and harassment. (*Id.* at 6.) She attached to her state court complaint an Equal Employment Opportunity Commission ("EEOC") determination and notice of rights letter, which suggested her state court complaint contained federal workplace discrimination claims related to those in Case No. 499.[2] (Case No. 687 Doc. No. 1-6 at 11.)

On August 27, 2025, Defendant removed Plaintiff's state court action to this court. (Case No. 687 Doc. No. 1.) By then, in Case No. 499, Plaintiff had already filed her amended complaint, and the Clerk had issued the summons. (Case No. 499 Docs. No. 9, 12.)

On September 3, 2025, in Case No. 687, Defendant filed a motion to dismiss or consolidate the action with Case No. 499. (Case No. 687 Doc. No. 5.) The motion has been briefed and is under submission. (Case No. 687 Docs. No. 5, 6, 8, 10, 15.)

C.    Parallel and Simultaneous Proceedings in Both Actions

The court held an in-person status conference in both cases on December 15, 2025. (Case No. 499 Doc. No. 26; Case No. 687 Doc. No. 14.) In response to questioning by the

---

[2] Plaintiff attached the same EEOC letter to her original and amended complaints in Case No. 499. (Case No. 499 Docs. No. 1-2, 9-2.)

court, Plaintiff at first confirmed she intended to assert the same claims in both actions and she intended her amended complaint in Case No. 499 to contain "all of the claims [she was] trying to bring against" Defendant. (Case No. 499 Doc. No. 33-1 at 11, 14.) Yet, when asked if she opposed Defendant's motion to consolidate, she indicated the complaint in Case No. 687 contained an additional worker's compensation claim she did not include in her amended complaint in Case No. 499. (*Id.* at 25.) She sought to again amend her complaint in Case No. 499 to incorporate all her claims against Defendant so "that one case" would "include everything, if possible." (*Id.* at 26.)

After noting that a worker's compensation claim cannot be removed to federal court,[3] the court inquired whether Defendant would oppose a plan in which the court dismissed Case No. 687 and allowed Plaintiff to amend her complaint to proceed on all her claims in Case No. 499. Defendant opposed that approach, instead advocating for remand of any worker's compensation claim[4] or dismissal of Case No. 687, leaving Plaintiff's ADA and Title VII claims to proceed in this court. (*Id.* at 30–32, 37, 52.) At the close of the status conference, the court stated it would require the parties to file briefs on (1) why Case No. 687 should not be remanded on grounds that worker's compensation claims cannot be removed to federal court and (2) whether the court has jurisdiction to allow Plaintiff to amend her complaint to allege her worker's compensation claim in Case No.

---

[3] *See* 28 U.S.C. § 1445(c) ("A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States.").

[4] Defendant took the position that Plaintiff's state court complaint did not fairly allege a worker's compensation claim, and that claim should be litigated in state court. (Case No. 499 Doc. No. 33-1 at 43.)

499. (*Id.* at 47–53.)

Following the status conference, the court entered a written order requiring the parties to file briefs regarding whether, if Plaintiff is allowed to again amend her pleadings in Case No. 499, the court may exercise supplemental jurisdiction over those claims, and whether Case No. 687 "must be remanded to the Montgomery County Circuit Court pursuant to 28 U.SC. § 1447(c)[5] and 28 U.S.C. § 1445(c)." (Case No. 499 Doc. No. 30; Case No. 687 Doc. No. 18.) The parties complied and filed briefs in both cases. (Case No. 499 Docs. No. 33, 34; Case No. 687 Docs. No. 20, 21.) Plaintiff's briefs included statements to the effect that, due to her ongoing disabilities, she "feels [she is] not capable" of continuing to represent herself in this action. (Case No. 499 Doc. No. 34; Case No. 687 Doc. No. 21.)

Upon consideration of Plaintiff's briefs, the court held a telephone status conference in both actions on March 13, 2026. (Case No. 499 Doc. No. 35; Case No. 687 Doc. No. 22.) At the status conference, Plaintiff explained her statements regarding her inability to continue representing herself were intended as a request that she be allowed additional time to obtain an attorney. Plaintiff also stated from December to the present, she made attempts to secure counsel but was unsuccessful. Following the status conference, the court construed Plaintiff's briefs as containing a motion for extension of time to seek legal counsel. (Case No. 499 Doc. No. 38; Case No. 687 Doc. No. 25.) Because, since filing the

---

[5] 28 U.S.C. § 1447(c) provides: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

motions, Plaintiff "attempted diligently but unsuccessfully to obtain an attorney," the court denied the motions as moot. (Case No. 499 Doc. No. 38; Case No. 687 Doc. No. 25.)

Defendant's motion to dismiss (Case No. 499 Doc. No. 14) and motion to dismiss or consolidate (Case No. 687 Doc. No. 5) are ready for disposition.

## IV.    DISCUSSION

In Case No. 499, Defendant seeks dismissal of Plaintiff's claims on grounds the amended complaint is a shotgun pleading. (Case No. 499 Doc. No. 14.) Defendant also seeks dismissal of Plaintiff's Title VII retaliation claim due to Plaintiff's failure to exhaust her administrative remedies. (*Id.*) In Case No. 687, Defendant seeks to dismiss or consolidate the action with Case No. 499 on grounds that Plaintiff brings the same claims in both actions. (Case No. 687 Doc. No. 5.) Here, the undersigned addresses only Defendant's motion to dismiss filed in Case No. 499.[6]

A.    Plaintiff's Amended Complaint

1.    Plaintiff's Factual Allegations[7]

In her amended complaint, Plaintiff makes the following allegations.  In August 2019, Defendant Hyundai employed her to work in its Engine Department. (Case No. 499 Doc. No. 9 at ¶ 12.) Between January 2020 and October 2023, Plaintiff filed and renewed

---

[6] The undersigned addresses Defendant's motion to dismiss or consolidate filed in Case No. 687 in a separate Recommendation.

[7] Plaintiff's factual allegations are construed liberally and in the light most favorable to her. *Resnick*, 693 F.3d at 1321–22; *Douglas*, 535 F.3d at 1320.

several Family and Medical Leave Act ("FMLA")[8] short- and long-term disability leave claims related to diagnosis and treatment of lupus. (*Id*. at ¶ 15.)

When Plaintiff returned to work from FMLA leave in October 2023, a coworker assaulted her. (*Id.* at ¶ 16.) Plaintiff reported the attack to Defendant's human resources department ("HR") and requested that she no longer be required to work near her attacker. (*Id*.) Defendant refused to accommodate this request.[9] (*Id.*)

In December 2023, the hostile coworker attacked Plaintiff again. (*Id.* at ¶ 18.) Plaintiff again reported the incident to HR and stated she refused to continue working alongside that coworker. (*Id.*) Defendant threatened to terminate Plaintiff's employment unless she continued working with the hostile coworker. (*Id.*) Fearing the loss of her job, Plaintiff relented and returned to work alongside the coworker. (*Id.*) In January 2024, due to the ongoing stress of working with her attacker, Plaintiff was again referred to a therapist. (*Id*. at ¶ 19.)

In February 2024, Plaintiff first requested workplace accommodations "due to her [l]upus and [s]ensorineural disabilities."[10] (*Id.* at ¶ 21.) She also provided documentation from her therapist. (*Id.* at ¶ 23.) As a proposed reasonable accommodation, Plaintiff requested a change to a quieter environment and to no longer be required to work on

---

[8] Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" in certain circumstances, including intermittent leave for planned medical treatment when medically necessary. 29 U.S.C. § 2612(a)–(b).

[9] Due to the mental stress of working alongside her attacker, Plaintiff began seeing a therapist in late November 2023. (*Id.* at ¶ 17.)

[10] Plaintiff's amended complaint does not explain the nature of her sensorineural disabilities.

rotating work weeks. (*Id*.) She submitted her accommodation request "in the form and manner customarily made and accepted by Defendant." (*Id*. at ¶ 22.)

In March 2024, Plaintiff's therapist diagnosed her "with post-traumatic stress disorder (['] PTSD[']), severe anxiety related to working in an uncongenial work environment, and major depression." (*Id.* at ¶ 20.)

Defendant responded to Plaintiff's first disability accommodation request with a letter requesting documentation of Plaintiff's "then existing restrictions; the diagnosis, medications or bodily functions to which these restrictions were related; and the expected duration of the restrictions." (*Id.* at ¶ 24.) Plaintiff replied by submitting correspondence from her therapist's nurse practitioner stating Plaintiff's "diagnoses, the medications that the Plaintiff was taking, the restrictions sought, and that Plaintiff's condition was ongoing." (*Id.* at ¶¶ 25–26.) In May 2024, Defendant sent Plaintiff a letter erroneously stating Plaintiff had failed to provide the requested documentation of her disability. (*Id.* at ¶ 27.)  In truth, as Plaintiff reminded Defendant during several telephone conversations, Defendant had received the nurse practitioner's documentation. (*Id*.)

Shortly thereafter, due to lupus-related disabilities, Plaintiff made a second accommodation request. (*Id*. at ¶ 28.) She again proposed reasonable accommodations of a quieter work environment and relief from rotating work weeks. (*Id*.) Again, she submitted her request "in the form and manner customarily made and accepted by Defendant Hyundai." (*Id.* at ¶ 29.) She provided documentation from her rheumatologist, who "wrote Hyundai in support of [her] accommodation request" informing Defendant that Plaintiff "was diagnosed with [lupus]; that she would need accommodations to (i) change her work

11

environment to a quieter environment; and (ii) [to] no longer be required . . . to work on rotating work weeks." (*Id.* at ¶ 30.) The rheumatologist stated the requested accommodations "would be needed indefinitely." (*Id.*)

In May 2024, Defendant informed Plaintiff "her accommodation requests were under consideration." (*Id.* at ¶ 31.) Four months later, in September 2024, Defendant informed Plaintiff "she had four (4) options to choose from in order to continue her employment with the Defendant. Those options were: (i) [Plaintiff] could return to work [at] her assigned job . . . by October 20, 2024; (ii) provide a definitive date in the near and foreseeable future when the Plaintiff would return to work with or without a reasonable accommodation; (iii) propose a reasonable accommodation that would allow [her] to return to work on a definitive date in the near and foreseeable future; and (iv) apply for other open positions." (*Id.* at ¶ 32.) Yet, Defendant had not considered or made any decision regarding Plaintiff's two proposed accommodations. (*Id.* at ¶¶ 33–34.) Instead, Defendant "effectively ignored" Plaintiff's proposed accommodations "and pretended as if" she hadn't made them. (*Id.* at ¶ 35.)

Accordingly, Plaintiff telephoned Defendant and complained it was ignoring her reasonable proposed accommodations and was not giving her proposed accommodations appropriate consideration. (*Id.* at ¶ 36.) In the process, she complained of disability discrimination. (*Id.*) Plaintiff again asked Defendant to consider and grant her proposed accommodations. (*Id.* at ¶ 37.)

Following Plaintiff's discrimination complaints, proposed accommodations, and complaints about the handling of those requests, on November 13, 2024, Defendant

terminated Plaintiff's employment. (*Id*. at ¶ 38.) Defendant stated it was terminating Plaintiff because she had failed to provide a reasonably foreseeable return-to-work date. (*Id*. at ¶ 39.) Plaintiff alleges this reason was pretextual, as indicated by the fact that providing a return-to-work date was just one of four options Defendant had offered, and she had satisfied one of the other four by proposing reasonable accommodations Defendant repeatedly refused to acknowledge or consider. (*Id*. at ¶¶ 39–41.)

### 2.    Plaintiff's Claims

In Count I of the amended complaint, Plaintiff alleges Defendant discriminated against her because of her disability by (1) "subject[ing] her to adverse job actions, including a reduction in work hours and a termination;" (2) "not engaging in an interactive process to determine whether a reasonable accommodation existed for her disability to allow her to hold her job position;" and (3) "failing to accommodate her disability." (*Id.* at ¶¶ 44–46.)

In Count II of the amended complaint, Plaintiff alleges Defendant retaliated against her in violation of the ADA and Title VII by terminating her employment because she complained of disability discrimination and retaliation. (*Id*. at ¶¶ 50–54.)

### B.    Defendant's Motion to Dismiss

### 1.    Shotgun Pleading

Defendant argues Plaintiff's amended complaint is due to be dismissed as a shotgun pleading because she "adopts the allegations of all preceding counts into each new count," and she failed to separate each cause of action or claim for relief into a separate count of the amended complaint. (Case No. 499 Doc. No. 14 at 6 (citing *Weiland*, 792 F.3d at 1322–

13

33).) The Eleventh Circuit has identified an inexhaustive list of types of shotgun pleadings, and pleadings that commit those two errors are on the list. *Weiland*, 792 F.3d at 1322–33. To an extent, Plaintiff commits those two errors. However, the Eleventh Circuit elucidated: "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.[11] Therefore, errors like Plaintiff's are not shotgun pleading errors if they are not so egregious as to prevent Defendant from understanding the basis for her claims and responding to her allegations.[12] *Id.* at 1324–26 (holding certain claims were not subject to dismissal for shotgun pleading errors because, even though the complaint was "not a model of efficiency or specificity," it nevertheless provided adequate notice of the plaintiff's specific claims and the factual allegations supporting those claims).

After all, Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It is not intended to erect hyper-

---

[11] *Weiland* explained Rule 8(a)(2) requires "the pleader to present his claims discretely and succinctly[] so that[] his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not." *Weiland*, 792 F.3d at 1320 (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting)). In failing to satisfy that purpose, shotgun pleadings create confusion that prevents meaningful, efficient litigation of the plaintiff's claims. *Id.*; *Anderson*, 77 F.3d at 366–67.

[12] In fact, the Federal Rules of Civil Procedure expressly provide that separating "each claim founded on a separate transaction or occurrence" is only necessary "[i]f doing so would promote clarity." Fed. R. Civ. P. 10(b); *see Weiland*, 792 F.3d at 1325 n. 18 ("A complaint is not always required to contain a separate count for each constitutional provision that the same set of facts is claimed to violate." (citing Fed. R. Civ. P. 10(b))).

14

technical pleading requirements as barriers to civil actions. *See Resnick.*, 693 F.3d at 1324 ("Under the notice-pleading standard, we no longer require the hyper-technical code pleadings of ages past, and we draw on our judicial experience and common sense when construing the allegations in a complaint." (citation modified)); *see also Twombly*, 550 U.S. at 555 (stating that a pleading must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests"); *Douglas*, 535 F.3d at 1322 ("While we do not require technical niceties in pleading, we . . . demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong." (citation modified)); *Collier v. Buckner*, 303 F. Supp. 3d 1232, 1241 (M.D. Ala. 2018) ("Rules 8(a) and 10(b) are not intended to serve as a difficult hurdle requiring pleading perfection. Instead, they impose a minimum, common sense drafting requirement."). This is particularly so where, as here, Plaintiff is proceeding *pro se*. *Douglas*, 535 F.3d at 1320.

Applying the governing pleading rules with common sense and deference to the fact that Plaintiff is not a lawyer, the undersigned concludes the amended complaint is clear and plain enough to place Defendant on notice of her ADA claims.[13] In Count I, Plaintiff alleges Defendant discriminated against her based on her disability in violation of the

---

[13] The undersigned pretermits discussing whether Plaintiff's Title VII claim suffers terminal shotgun pleading errors because her Title VII claims are subject to dismissal on other grounds.

ADA[14] by reducing her work hours[15] and terminating her employment, refusing to engage in an interactive process to identify a reasonable accommodation, and failing to accommodate her disability. (Case No. 499 Doc. No. 9 at ¶¶ 42–49.) Plaintiff describes several instances in which Defendant failed to consider or respond to the reasonable accommodations she proposed. She also presents specific facts to support her allegation that Defendant terminated her on the basis of her disability and that Defendant's stated reason for her termination was pretextual. Thus, a common-sense reading of the amended complaint is certainly sufficient to glean the legal and factual basis on which Plaintiff contends Defendant discriminated against her because of her disability.

In Count II, Plaintiff alleges Defendant terminated her employment because she complained to Defendant of disability discrimination, including refusal to accommodate her disability.[16] In her statement of facts, she provides factual allegations describing instances in which she complained to Defendant about disability discrimination and retaliation. She describes how Defendant refused to consider her complaints and terminated her employment, how it ignored her responses to its documentation requests, and how it

---

[14] The ADA prohibits employers from discriminating against employees "on the basis of disability." 42 U.S.C. § 12112(a). Disability discrimination can include, among other things, "not making reasonable accommodations to the known physical or mental limitations of the employee." 42 U.S.C. § 12112(b)(5). It can also include adverse employment actions such as termination. 42 U.S.C. § 12112(a); *Menzie v. Ann Taylor Retail Inc.*, 549 F. App'x 891, 893 (11th Cir. 2013).

[15] Though Plaintiff's factual allegations might not include a plain and clear statement as to how or when Defendant discriminatorily reduced Plaintiff's work hours, Defendant does not move for dismissal on that basis.

[16] The ADA prohibits retaliation against an individual for opposing disability discrimination or making a disability discrimination charge. 42 U.S.C. § 12203(a).

terminated her on false pretenses after she complained. Fairly read, the amended complaint is adequate to place Defendant on notice of the legal and factual basis for Plaintiff's ADA retaliation claim.

True, Plaintiff might have more thoroughly separated her claims into separate counts, and could have more precisely identified the facts relevant to each ADA claim. However, Plaintiff's "failure to more precisely parcel out" her ADA discrimination claims does not "materially increase[] the burden of" identifying those claims or "understanding the factual allegations underlying" them. *Weiland*, 792 F.3d at 1324 (holding certain claims did not contain terminal shotgun pleading errors because "failure to more precisely parcel out and identify the facts relevant to each claim" did not "materially increase[] the burden of understanding the factual allegations underlying each count").

In sum, the amended complaint is clear and plain enough to place Defendant on notice of Plaintiff's ADA discrimination and retaliation claims and the facts on which those claims rest. Therefore, Defendant is not entitled to dismissal of the complaint due to shotgun pleading errors. [17] *Id*. at 1325 ("A dismissal [for shotgun pleading] at is appropriate

---

[17] The undersigned merely concludes the amended complaint provides sufficient <u>notice of the legal and factual basis</u> for Plaintiff's ADA claims to avoid dismissal of those claims on shotgun pleading grounds. The undersigned makes no finding as to whether Plaintiff's factual allegations are <u>sufficient to support</u> those claims. *See Weiland*, 792 F.3d at 1320, 25 (differentiating between Rule 12(e) dismissal on shotgun pleading grounds and dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted); *see also Anderson*, 77 F.3d at 365 ("Under the Federal Rules of Civil Procedure, a defendant faced with a [shotgun] complaint . . . is not expected to frame a responsive pleading. Rather, the defendant is expected to move the court, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement."). Here, Defendant does not argue for dismissal of Plaintiff's ADA claims on grounds that her factual allegations are insufficient to satisfy one or more elements of those claims. Instead, Defendant argues that, as a shotgun pleading,

where it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief. No such virtual impossibility exists in this case." (emphasis in original; citation modified)).

### 2.   Failure to Exhaust Administrative Remedies

Defendant argues Plaintiff failed to state a Title VII retaliation claim because she failed to exhaust her administrative remedies with respect to that claim. (Case No. 499 Doc. No. 14 at 8–10.) The undersigned agrees.

Title VII prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It also prohibits retaliation against employees for opposing or making a charge of discrimination on the basis of race, color, religion, sex, or national origin. [18]  42 U.S.C. § 2000e-3(a). As a prerequisite to stating a Title VII retaliation claim, a plaintiff must first exhaust her administrative remedies by timely filing a charge with the EEOC. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317

---

the amended complaint is so deficient that it cannot understand the factual or legal basis for the ADA claims. (Case No. 499 Doc. No. 14 at 6–8.)

[18] In response to the motion to dismiss, Plaintiff contends Title VII retaliation claims arise when "an employer takes adverse action against an employee for engaging in 'protected activity.'" (Case No. 499 Doc. No. 22 at 1; Case No. 499 Doc. No. 33-1 at 16, 19–20; *see also* Case No. 499 Doc. No. 32.) She then lists allegedly protected activities in which she engaged: reporting OSHA violations, complaining of workplace violence, filing worker's compensation claims, opposing a HIPAA violation, complaining of disability discrimination, and complaining of failure to follow the proper procedures for handling her request for disability accommodations. (Case No. 499 Doc. No. 22 at 1–3.) Title VII only protects activities related to reporting or opposing discrimination based on one Title VII's protected characteristics (race, color, religion, sex, or national origin). 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). Activities that do not fall within those categories do not fall within Title VII's protection from retaliation. Plaintiff does not contend she engaged in activity that falls within Title VII's protection.

(11th Cir. 2001). A plaintiff's judicial complaint "is limited by the scope of the EEOC investigation which can reasonably be expected to grow out" of the EEOC charge. *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (citation modified). Plaintiff's EEOC charge, which she submitted as an exhibit to her amended complaint, does not contain any reference, indication, or hint of discrimination or retaliation based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). (Case No. 499 Doc. No. 9-1 at 2; Case No. 499 Doc. No. 10.)  It does not contain anything that could conceivably lead to an investigation of a Title VII violation. (*Id.*) It contains only facts related to disability discrimination and disability-related retaliation. (*Id.*)

Accordingly, Plaintiff did not exhaust her remedies as to a Title VII claim, and Defendant is entitled to dismissal of that claim.[19]

### V.   CONCLUSION

Accordingly, the undersigned RECOMMENDS as follows:

1.      Defendant's Motion to Dismiss (Case No. 499 Doc. No. 14) be GRANTED

IN PART as to Plaintiff's Title VII retaliation claim and DENIED IN PART

---

[19] Generally, prior to dismissal of a *pro se* complaint for failure to state a claim upon which relief can be granted, the plaintiff must be afforded one opportunity to amend the complaint if (1) the plaintiff does not clearly indicate a lack of desire to amend and (2) a more carefully drafted amended complaint might, with more specific allegations against the proper defendant, state a claim upon which relief could be granted. *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 & n.1 (11th Cir. 2002) (en banc) (overruling *Bank* only as to plaintiffs who are represented by attorneys). Plaintiff has already been given one opportunity to amend her complaint. Furthermore, her response to Defendant's motion to dismiss does not provide any indication that she could conceivably amend her complaint to state a Title VII claim. Therefore, Plaintiff is not entitled to another opportunity to amend her Title VII claim.

as to Plaintiff's ADA discrimination and retaliation claims.

2.     Plaintiff's Title VII claim be dismissed.

3.     This action be referred back to the Magistrate Judge for further proceedings.

Further, it is ORDERED that the parties shall file any objections to this Recommendation on or before **May 6, 2026**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Plaintiff is advised that this Recommendation is not a final order of the Court; therefore, it is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

DONE this 22nd day of April, 2026.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE

20